UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joanne P. Harris,

    Plaintiff,

    v.                                                 Civil Action No. 2:14-cv-65-jmc

Carolyn W. Colvin, Acting Commissioner
of Social Security Administration,

    Defendant.

**OPINION AND ORDER**
(Docs. 9, 11)

      Plaintiff Joanne Harris brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Harris's motion to reverse the Commissioner's decision (Doc. 9), and the Commissioner's motion to affirm the same (Doc. 11). For the reasons stated below, Harris's motion is DENIED, and the Commissioner's motion is GRANTED.

**Background**

      Harris was 47 years old on her alleged disability onset date of November 26, 2010. She has an associate's degree, and has worked in various administrative office jobs in both the United States and Canada. As of August 2014, she was living in Canada. (Doc. 9 at 2.) According to Harris, her eligibility for social security disability benefits depends on the United States' "totalization agreement" with Canada, which allows her to

aggregate work credits based on her work in both the United States and Canada for purposes of benefits qualification.[1] (*Id.* at 2, 12–13 (citing U.S.-Canadian Social Security Agreement, available at http://www.ssa.gov/international/Agreement_Texts/canada.html (last visited 1/8/15); 42 U.S.C. § 433).)

Harris suffers from fibromyalgia, patellofemoral syndrome (pain in the front of the knee), Ehlers-Danlos syndrome ("EDS") (an inherited connective tissue disorder), chronic obstructive pulmonary disease ("COPD"), chronic sinusitis and bronchitis, and diabetes.  These conditions have caused her joint pain, neck and back pain, knee pain, chronic fatigue, and coughing/choking spells.  She requires multiple medications including several inhalers for her respiratory condition, walks with a cane, and takes two or three naps each day.  Harris testified at the January 2013 administrative hearing that, on a typical day, she does not do much other than lie down, eat meals, take her medications, and use her phone and the internet.  (AR 43–44.)  She further testified that doing anything is extremely tiring and painful for her; she is coughing all the time; she does not go out much; and when she does go out, someone (often her son) has to accompany her.  (AR 44, 46.)  In a March 2011 Function Report, Harris reported that,

---

[1] Pursuant to the Social Security Act, the United States and foreign countries may enter into totalization agreements which govern the entitlement to and amount of retirement benefits for a worker who has worked both here and abroad.  *See* 42 U.S.C. § 433(a).  Under the Act, totalization agreements "shall provide . . . that in the case of an individual who has at least 6 quarters of coverage . . . and periods of coverage under the social security system of a foreign country which is a party to such agreement, periods of coverage of such individual under such social security system of such foreign country may be combined with periods of coverage under [the United States system] and otherwise considered for the purposes of establishing entitlement to and the amount of . . . disability insurance benefits."  *Id.* at § 433(c)(1)(A).  These agreements help fill gaps in benefits protection for workers who have divided their careers between the United States and another country and thus, may not otherwise qualify for Social Security benefits in either country.  Prajna Tuladhar, *There's Something about Mexico: Exploring the Controversy, Costs, and Benefits of a Social Security Totalization Agreement with Our Neighbor to the South*, 15 Elder L.J. 581, 582 (2007).

despite her impairments, she was able to care for her school-age son, feed her dog, cook meals, shop with assistance, perform household chores with assistance, bake, pay bills, and socialize on the telephone and computer.  (AR 158–60, 165–69.)

In November 2010, Harris protectively filed an application for disability insurance benefits, alleging that she stopped working on August 5, 2005[2] due to fibromyalgia, patellofemoral syndrome, EDS, COPD, chronic sinusitis and bronchitis, and diabetes. (AR 148.)  The application was denied initially and upon reconsideration, and Harris timely requested an administrative hearing.  The hearing was conducted on January 4, 2013 by Administrative Law Judge ("ALJ") Thomas Merrill.  (AR 34–55.) Harris appeared and testified, and was represented by an attorney.  A vocational expert ("VE") also testified at the hearing.  On February 21, 2013, the ALJ issued a decision finding that Harris was not disabled under the Social Security Act at any time from her amended alleged onset date of November 26, 2010 through December 31, 2010, her date last insured.  (AR 13–22.)  Thereafter, the Appeals Council denied Harris's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–4.) Having exhausted her administrative remedies, Harris filed the Complaint in this action on April 3, 2014.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial

---

[2] Harris later amended her alleged disability onset date to November 26, 2010.  (AR 203.)

gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that Harris last met the insured status requirements of the Social Security Act on December 31, 2010. (AR 15.) Regarding Harris's work history in Canada, the ALJ explained that, although he had been unable to obtain earnings records confirming quarters of coverage while Harris worked in Canada, he would proceed in the disability analysis "on the assumption that [Harris] had the requisite quarters based upon Canadian earnings." (AR 16.) Next, the ALJ found that Harris had not engaged in substantial gainful activity from her alleged onset date of November 26, 2010 through her date last insured of December 31, 2010. (*Id.*) At step two, the ALJ found that Harris had the following severe impairments: degenerative disc disease of the lumbar spine and cervical spine, and fibromyalgia. (*Id.*) Conversely, the ALJ found that Harris's other alleged impairments—patellofemoral syndrome, EDS, COPD, asthma, chronic sinusitis and bronchitis, and diabetes—were non-severe, given that they did not cause significant limitations in Harris's ability to perform one or more basic work activities during the relevant period. (*Id.*) At step three, the ALJ found that none of Harris's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 18.)

Next, the ALJ determined that Harris had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she could stand and/or walk for no more than four hours each workday; she could only occasionally climb, balance, stoop, kneel, crouch, and crawl; and she should avoid even moderate exposure to airborne irritants, particularly pesticides. (*Id.*) Given this RFC, and considering the VE's testimony at the administrative hearing, the ALJ found that Harris was capable of performing her past

5

relevant work as an assistant buyer and a customer service administrator. (AR 21.) The ALJ concluded that Harris had not been under a disability from November 26, 2010, the alleged disability onset date, through December 31, 2010, the date last insured. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the

6

determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

### I. ALJ Bias

Harris alleges that the ALJ's "overwhelming preoccupation" with her foreign work resulted in bias and prevented her from receiving a full and fair hearing on the issue of her alleged disability. (Doc. 9 at 3.) Harris argues that "the ALJ determined, sometime before the [administrative] hearing, that [she] had insufficient earning quarters to qualify for Title II benefits because she had worked in Canada[,]" and that this conclusion "steered the entire hearing away from the central issue: Ms. Harris's disability." (*Id.* at 4.) Harris claims the short duration of the administrative hearing and the ALJ's questions about her Canadian work history demonstrate bias. (*Id.* at 10–11.) Given this bias, Harris argues that the matter should be remanded to a new ALJ for further proceedings and a new decision.

The evidence does not support Harris's theory of ALJ bias. Despite Harris's claim that the ALJ was exclusively focused on Harris's work history in Canada (and not the United States), the written decision addresses this issue only very briefly while considering in detail Harris's alleged disabling conditions. (*See* AR 15–21.) Moreover,

the ALJ's decision states that, although the ALJ was unable to obtain Harris's earnings records from Canada, "the analysis will continue *on the assumption that [Harris] had the requisite quarters based upon Canadian earnings*." (AR 16 (emphasis added).)  And the ALJ afforded Harris a date last insured of December 31, 2010 (AR 15–16), which Harris does not contest.  Therefore, despite any questions the ALJ may have had regarding Harris's Canadian work history, he explicitly accepted the premise that Harris had sufficient quarters of coverage to qualify for disability benefits and proceeded to consider the merits of her claim.

The Supreme Court has held that, although due process demands impartiality by administrative adjudicators, courts "must start . . . from the presumption that [these adjudicators] are unbiased." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982).  "This presumption can be rebutted by a showing of conflict of interest or some other specific reason for disqualification[; b]ut the burden of establishing a disqualifying interest rests on the party making the assertion." *Id.* at 195–96 (footnote and citations omitted).  Harris has not met this burden, as she has failed to show any evidence suggesting that the ALJ's decision was a product of bias.  *See Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 119 (2d Cir. 1999) (explaining that, in order to show that an ALJ's bias resulted in the denial of a fair hearing, a claimant must demonstrate that the ALJ exhibited a "'deep-seated favoritism or antagonism that would make a fair judgment impossible'") (alteration omitted) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

Harris cites to *Ventura v. Shalala*, 55 F.3d 900 (3d Cir. 1995), in support of her bias claim (*see* Doc. 9 at 10–11), but that case is easily distinguishable from this one.

There, the Third Circuit described the ALJ's conduct during the administrative hearing as "coercive," "intimidating," "disinterested," "offensive," and "unprofessional." *Ventura*, 55 F.3d at 903, 905.  The court noted that the ALJ threatened to throw out a witness; reprimanded the plaintiff's representative when he attempted to question the medical expert; and made the following statements to the plaintiff's representative: "What's the matter with you?"; "[Y]ou're not doing one damn thing to help [the plaintiff].  So why don't you sit back and listen for a second."; and "[W]ake up and smell the roses on this case." *Id.* at 903–04.  The court held that the ALJ's "continuous interference with the representative's introduction of evidence [to support the plaintiff's claim] violated the ALJ's duty to develop the record fully and fairly," and remanded the case for review by another ALJ. *Id.* at 904.  The court in *Ventura* found instructive another case, *Rosa v. Bowen*, 677 F. Supp. 782 (D. N.J. 1988).  In *Rosa*, the court remanded for a full and fair hearing because the administrative hearing initially conducted by the ALJ "was shameful in its atmosphere of alternating indifference, personal musings, impatience and condescension." *Id.* at 783.  The court explained that the ALJ perfunctorily and impatiently denied all procedural requests of the plaintiff's attorney, continually harassed the attorney, and ordered the attorney to accelerate presentation of case.[3]  *Id.* at 783–84.

---

[3] The court in *Rosa* further described the ALJ's conduct at the administrative hearing as follows:

> During the few moments that the ALJ actually devoted to the substance of the hearing, his focus was wholly improper.  He measured the gravity of [the] plaintiff's condition against his own mother's illnesses.  He gave extensive advice to the plaintiff about the proper medication for, and diagnosis of, her illnesses.  He even offered his opinion as to whether a person suffers more from diarrhea than from constipation.

*Rosa*, 677 F. Supp. at 784 (citations omitted).

Here, in sharp contrast to the situation in *Ventura* and *Rosa*, the ALJ's questioning about Harris's Canadian work history was not coercive, harassing, unprofessional, or disinterested; and it comprised only a small percentage of the hearing record and written decision. While the ALJ's statements and questions indicate that he was unclear about whether Harris had sufficient earnings to qualify for disability benefits (*see, e.g.*, AR 36 ("I don't have any Canadian wages. The only document that I have indicates that she has 25 orders of earning, which would support the prior determination back in 2006 that she does not have insured status.")), there is no indication that the ALJ harbored any prejudices against Harris, conducted an unfair hearing, or decided Harris's claim on any basis other than that stated in his written decision.[4]

Accordingly, Harris has failed to meet her burden of showing ALJ bias or other conduct preventing her from obtaining a full and fair hearing. The ALJ's mere inquiring about Harris's Canadian work history during the administrative hearing (AR 36–38, 40–42), and noting the issue in his written decision (AR 15–16), is not sufficient evidence to demonstrate his bias, especially given that: (1) Harris was represented by an attorney at the administrative hearing and that attorney extensively questioned her regarding how her alleged disability limited her ability to function during the relevant period (AR 44–50);

---

[4] Harris's dramatic statement that "[t]he record is replete with evidence of . . . Judge Merrill's bias, including the ALJ's commentary during the hearing, his incessant focus on [Harris's] Canadian work history, the short shrift given to the sole issue for consideration—her disability—and the decision itself that includes substantial commentary on Ms. Harris's lack of established earnings history" (Doc. 12 at 1–2), is simply not supported by the record.

and (2) the ALJ ultimately decided to consider and decide the merits of Harris's disability claim, accepting her alleged date last insured of December 31, 2010 (AR 16–21).[5]

## II.     Analysis of Medical Opinions

Next, Harris asserts that the ALJ did not give enough weight to the opinion of Harris's treating rheumatologist, Dr. Michael Starr, and gave too much weight to the opinion of nonexamining agency consultant, Dr. Lewis Cylus. (Doc. 9 at 16–21.) For the following reasons, the Court finds no error.

### A.     Dr. Starr's Opinion

Harris has treated with Dr. Starr since August 2006. (AR 543.) In August 2012, Dr. Starr prepared a letter "To Whom It May Concern" regarding Harris's impairments and functional capacity. (AR 600.) Therein, Dr. Starr stated that Harris suffered from many conditions, resulting in "chronic and progressive joint pain, neck and back pain, knee pain, and very significant chronic fatigue." (*Id.*) He further stated that Harris had "almost daily coughing and choking spells," was using a cane on a daily basis, and was taking regular analgesic medications which could be contributing to her fatigue. (*Id.*) Dr. Starr opined that, "[d]ue to the multitude of issues that [Harris] is dealing with . . . [,] the cumulative effect . . . has resulted in a significant decrease in her ability to function

---

[5] As further evidence of ALJ bias, Harris points out that the ALJ's written decision erroneously references testimony by an impartial medical expert at the administrative hearing, when in fact no medical expert testified at the hearing. (Doc. 9 at 20.) The ALJ's mistaken statement that medical expert "Louis A Fuchs" appeared and testified at the administrative hearing (AR 13) amounts to harmless error, however, and does not constitute evidence of bias. First, the statement was made in the initial page of the ALJ's decision and was not part of the substantive analysis and decision. (AR 13, 19–21.) Second, the ALJ clearly was aware that no medical expert testified at the administrative hearing, as the topic was discussed at the conclusion of that hearing, the ALJ explaining to Harris's counsel that the medical expert was not required because "[he] was an ortho[pedist] and it looks like these issues aren't orthopedic[,]" and Harris's attorney responding: "Right. I . . . agree with that." (AR 54.)

and I do not think she is able to consider working full[ ]time any longer." (*Id.*)  He further opined that, "[p]art-time sedentary type of work could be an option for [Harris] to consider if such work [is] available, given her employment and academic background[; h]owever, even this option may not be realistic for her." (*Id.*)

Under the "treating physician rule," the opinion of a treating physician is accorded "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial [record] evidence." 20 C.F.R. § 404.1527(c)(2). Even when a treating physician's opinion is not given controlling weight, the opinion is still entitled to some weight, given that such physician "[is] likely to be the medical professional[] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* The deference given to a treating physician's opinion may be reduced, however, upon consideration of several factors, including the length and nature of the treating doctor's relationship with the patient, the extent to which the medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors which tend to contradict the opinion. 20 C.F.R. § 404.1527(c)(3)–(6); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where, as here, the

12

treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.") (citation omitted).

The ALJ gave "limited weight" (AR 20) to Dr. Starr's opinion for three reasons. First, the ALJ stated that the opinion "concerns the ultimate issue reserved for the Commissioner and [thus] cannot be given controlling weight." (AR 21.) This was a proper factor for the ALJ to consider. The regulations provide that "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," 20 C.F.R. § 404.1527(d)(1), because whether a claimant is disabled or unable to work is an "administrative finding[] that [is] dispositive of [the] case," and thus is an issue reserved to the Commissioner, *id.* at § 404.1527(d). *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[a] treating physician's statement that the claimant is disabled cannot itself be determinative").

Second, the ALJ explained that he gave limited weight to Dr. Starr's opinion because it is not material to the relevant time period, as it was prepared over two years after Harris's insured status expired and addresses conditions which began after the relevant period ended. (AR 21.) This was also a proper factor for the ALJ to consider in weighing Dr. Starr's opinions, as entitlement to disability insurance benefits requires a claimant to demonstrate that she was disabled *prior to her date last insured*. *See Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989) (stating that, "[a] 'period of disability' can only commence . . . while an applicant is 'fully insured[,]'" and finding that the claimant presented no evidence concerning the relevant period and that the evidence of disability before and after that period did not establish disability during that period) (quoting *Sprow*

13

*v. Bowen*, 865 F.2d 207, 208 (9th Cir. 1989)) (citing 42 U.S.C. § 416(i)(2)(C)); *see also Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991). Here, Dr. Starr's opinion was rendered on August 31, 2012 (AR 600), well over a year after Harris's date last insured of December 31, 2010.[6] The opinion references "recent issues" (an ovarian cyst, a hysterectomy, and rectal bleeding, as well as "daily coughing and choking spells") which do not appear to have existed prior to December 31, 2010; and is written in the present tense with no retrospective component. (*Id.*)

Third, the ALJ found that Dr. Starr's opinion was deserving of only limited weight because it is unsupported and inconsistent with other relevant evidence. (AR 21.) It was proper for the ALJ to consider these factors in determining what weight to afford to Dr. Starr's opinions. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."), (4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Moreover, substantial evidence supports the ALJ's determination that Dr. Starr's opinion is not supported by either his own treatment notes or those of other providers. (*See, e.g.*, AR 350–51, 355–56, 359, 361, 508–09.) For example, in an October 2010 treatment note, a medical provider recorded that chest x-rays and a barium swallow test were unremarkable; an ENT assessment found no abnormalities; and

---

[6] As Harris points out (Doc. 9 at 18), the ALJ mistakenly stated that Dr. Starr's opinion was made "2.5 years after [Harris's] insured status expired" (AR 21), when in fact, the opinion was made approximately 20 months after Harris's insured status expired. The Court finds this error harmless. Whether the opinion was made 29 months or 20 months after the date last insured, the point remains: the opinion was not made during the relevant period and does not refer to that period.

14

examination results were normal other than sinus tenderness on palpation and a cough induced by forced expiration. (AR 508–09.) And in a November 2010 treatment note, Dr. Starr stated that, despite Harris's complaints of chronic pain, and although diffuse fibromyalgia tenderpoints were shown on examination, there was "a lack of <u>objective</u> findings." (AR 506.) Harris claims that "[t]here is ample medical opinion evidence in the record from [Dr. Starr]" (Doc. 9 at 16), but fails to cite to specific evidence supporting Dr. Starr's opinion (*see id.* at 16–19).

For these reasons, the Court finds that the ALJ did not err in his analysis of Dr. Starr's opinion: he considered proper and relevant factors, and his decision to afford limited weight to the opinion is supported by substantial evidence.

### B. Dr. Cylus's Opinions

The ALJ's analysis of the opinion of nonexamining agency consultant Dr. Cylus is also proper. In September 2011, Dr. Cylus opined that Harris was able to perform a wide range of light work. (AR 488 (referencing AR 56–65).) Specifically, Dr. Cylus affirmed the June 2011 opinion of disability analysis Peter Lodge, who opined after reviewing the record that Harris could, among other things, lift 20 pounds occasionally and 10 pounds frequently, stand/walk for a total of four hours, and sit for about six hours in an eight-hour workday, but should avoid airborne irritants including pesticides. (*Id.*)

The ALJ gave "substantial weight" to the opinion of Dr. Cylus, on the grounds that it is "consistent with the record evidence," as discussed in the ALJ's decision. (AR 20.) Although generally, the opinions of nonexamining consultants are less valuable than those of treating physicians, the consultant opinions may constitute substantial evidence

and may override the opinions of treating physicians when the former are supported by the record and the latter are not. *See Diaz v. Shalala*, 59 F.3d 307, 313 & n.5 (2d Cir. 1995); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993); SSR 96-6p, 1996 WL 374180, at *3 (1996) ("In appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical consultants are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). Here, the record supports the opinions of agency consultants Dr. Cylus and Lodge, and does not support the opinion of Dr. Starr, as discussed above. Harris contends that the opinions of Dr. Cylus and Lodge "provide little in terms of analysis" and that Dr. Cylus's opinion contains no "history or analysis to back it up." (Doc. 9 at 20.) But in fact, Lodge's opinion (which Dr. Cylus adopts and relies on in his opinion) comes at the end of a nine-page assessment, consisting of a summary of the evidence, an evaluation of Harris's credibility, detailed RFC findings, and consideration of vocational factors. (*See* AR 56–64, 488.) Moreover, as the Commissioner points out, none of Harris's treating sources assessed her with any limitations that would preclude her from performing the level of work that Dr. Cylus and Lodge opined she could do during the relevant period (November 26, 2010 through December 31, 2010). (*See* Doc. 11 at 16.)

Accordingly, Harris has not demonstrated that the ALJ erred in his analysis of the medical opinions. *See Jones*, 949 F.2d at 60 ("Since none of the doctors who treated [the claimant] expressed an opinion about [her] ability to work prior to [the date last insured],

[the claimant's] contention that the treating physician rule has been misapplied is without merit.").

## III. Credibility Assessment

Finally, Harris claims the ALJ erred in his credibility assessment. (Doc. 9 at 21–22.) The ALJ found that, although Harris's medically determinable impairments could reasonably cause the alleged symptoms, "[Harris's] statements concerning the intensity, persistence[,] and limiting effects of those symptoms are not entirely credible[.]" (AR 20.) The ALJ explained: "The objective evidence . . . falls short of demonstrating the existence of pain and limitations that are so severe that [Harris] cannot perform any work on a regular and continuing basis." (*Id.*)

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). An important indicator of the credibility of a claimant's statements is their consistency with other information in the record, including the claimant's medical treatment history. *Id.* at *5, 7.

17

Here, in determining Harris's credibility, the ALJ cited the appropriate authority; considered Harris's testimony at the administrative hearing, as well as her statements in disability forms such as Function Reports; and reviewed the objective medical evidence. (AR 18–20 (citing 20 C.F.R. § 404.1529; SSR 96-7p).)  Moreover, the ALJ's assessment that Harris was "not entirely credible" (AR 20) is supported by substantial evidence.  The ALJ accurately stated that the objective medical evidence does not support Harris's allegations of disabling limitations.  CT scans of Harris's chest, x-rays of her lungs and sinuses, and pulmonary function tests, were all generally unremarkable (*see* AR 233, 235, 254, 276, 342–45, 480–81, 496–98); as were CT scans, MRIs, and x-rays of Harris's spine, knees, and wrists (*see* AR 231, 251–52, 300, 310, 355–56, 361, 453–54, 492).  The ALJ also considered Harris's daily activities, accurately noting that Harris was able to care for her school-age son, feed her pet, cook meals, shop with assistance, perform household chores with assistance, bake, pay bills, and socialize on the telephone and computer.  (AR 19; *see* AR 158–60, 165–69.)  It was proper for the ALJ to consider Harris's ability to engage in these activities in determining the credibility of her disability claims.  *See Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)) ("in assessing the credibility of a claimant's statements, an ALJ must consider . . . the claimant's daily activities").  The ALJ also properly pointed out two particular inconsistencies between Harris's allegations and the record evidence: (1) Harris checked off a box in her Function Report indicating that she had difficulty hearing (AR 170), but there is no evidence supporting this allegation; and (2) Harris testified that she

18

was coughing "[a]ll the time" during the relevant period (AR 46), but the evidence—medical and otherwise—does not demonstrate such persistent coughing. (AR 19.)

In sum, the record does not support Harris's representations regarding the degree of limitation caused by her severe impairments, and the ALJ was not obliged to accept Harris's characterization of the record without question, especially when there is so little supporting objective medical evidence. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (citations omitted).

## Conclusion

For these reasons, the Court DENIES Harris's motion (Doc. 9), GRANTS the Commissioner's motion (Doc. 11), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 22nd day of January, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge